STATE OF MAINE
YORK, ss.

SUPERIOR COURT
CIVIL ACTION NO.

LEONARD N. BEAN and DAWN T. BEAN,

PLAINTIFFS

v.

BANK OF NEW YORK MELLON f/k/a
THE BANK OF NEW YORK, as Trustee
for the Certificateholders of CWALT, Inc.
Alternative Loan Trust 2006-J5, Mortgage
Pass-Through Certificates, Series 2006-J5,

and

BANK OF AMERICA, N.A.,

and

RESIDENTIAL CREDIT SOLUTIONS, INC.

DEFENDANTS

## COMPLAINT
## AND DEMAND FOR JURY TRIAL

### I.    INTRODUCTION

1.    This is an action for damages brought by Leonard and Dawn Bean, each an individual

consumer, against the Bank of New York Mellon as Trustee for the Certificateholders of

CWALT, Inc. Alternative Loan Trust 2006-J5, Mortgage Pass-Through Certificates, Series

2006-J5 ("Bank of New York"), the owner of the Bean's loan and Residential Credit Services,

Inc. ("RCS"), the servicer of the Bean's loan,  for a) violations of the Federal Fair Debt

Collection Practices Act, 15 U.S.C. § 1692 *et seq.* b) the Maine Fair Debt Collection Practices

Act, 32 M.R.S.A. §11001 *et seq.*, (hereinafter "FDCPA") which prohibit debt collectors from

1

engaging in abusive, deceptive, and unfair practices; and c) violation of the Maine Consumer Credit Code, 9-A M.R.S. §§9-403(G).

## II.    JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this matter pursuant to 4 M.R.S. § 105(1).

3.      Venue is appropriate inasmuch as the Plaintiffs are residents of York County.

4.      Venue is also proper in this Court because the Defendants systematically and continuously transact business in this county and State and the causes of action set forth in this Complaint, in part, arose in this county.

## III.    PARTIES

5.      Plaintiff Leonard Bean is a natural person residing in Waterboro, Maine

6.      Plaintiff Dawn Bean is a natural person residing in Waterboro, Maine.

7.      Leonard and Dawn Bean are husband and wife and will collectively be referred to as "the Beans."

8.      Upon information and belief, Defendant Bank of New York is a banking association organized and existing under the laws of the United States of America with a principal place of business in New York.

9.      The Bank of New York at all relevant times served as Trustee for a trust named CWALT, Inc. Alternative Loan Trust 2006-J5 Mortgage Pass-Through Certificates, Series 2005-J5 (the "Trust"), the owner of the Bean's loan.

10.     The Bank of New York as Trustee for the Trust was the Plaintiff in the foreclosure action, *Bank of New York Mellon v. Leonard and Dawn Bean,* Docket No. RE-14-54, Springvale District Court.

11.     The Pooling and Servicing Agreement (PSA) governing the Trust establishes that a

Master Servicer of the loans may arrange for Subservicing of the loans.  A copy of the 150 page

PSA can be found at

http://www.sec.gov/Archives/edgar/data/1368788/000090514806005238/efc6-

2094_5924491exhibit991.txt

12.     The "Master Servicer" of the Trust is Countrywide Home Loans Servicing, LP who is

now BAC Home Loan Servicing, LP, a subsidiary of Bank of America, N.A..

13.     Defendant Bank of America, N.A. (BANA) is a National Banking Association organized

under the laws of the United States, with its principal place of business in Phoenix, Arizona.

BANA is the parent company of BAC Home Loans Servicing, LP FKA Countrywide Home

Loans Servicing, LP.

14.     The current Subservicer is Defendant, Residential Credit Solutions, Inc. (RCS).

15.     Per the PSA, the Master Servicer, BANA,  is obligated and liable to the Trustee,

Defendant Bank of New York.  The Subservicer, RCS, is an agent of the Master Servicer,

BANA. Section 3.02 of the PSA is attached hereto as Exhibit 1.  It states:

> the Master Servicer shall remain obligated and liable to the Depositor, the Trustee and the
> Certificateholders for the servicing and administration of the Mortgage Loans in
> accordance with the provisions of this Agreement without diminution of such obligation
> or liability by virtue of such subservicing agreements or arrangements or by virtue of
> indemnification from the Subservicer and to the same extent and under the same terms
> and conditions as if the Master Servicer alone were servicing and administering the
> Mortgage Loans. All actions of each Subservicer performed pursuant to the related
> subservicing agreement shall be performed as an agent of the Master Servicer with the
> same force and effect as if performed directly by the Master Servicer.

16.     RCS is a general corporation organized under the laws of Delaware, with a principal

place of business in Texas.

3

17.     At all relevant times, upon information and belief, RCS was the subservicer (hereinafter the "servicer") of the Bean's mortgage loan on property located at 23 Ansel Drive, Waterboro, ME.

18.     At all relevant times, upon information and belief, RCS was acting as the servicer and agent of BANA and then Bank of New York.

19.     Upon information and belief, RCS acquired the subservicing rights of the Bean's loan in April 2014 and the loan was in default.

20.     RCS engages in the business of collecting debts in this state.

21.     RCS regularly engages in the enforcement of security interests securing debts.

22.     The principal purpose of RCS is the collection of debts using the mails and telephone, and RCS regularly attempts to collect debts alleged to be due another.

23.     Defendant RCS is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6), 32 M.R.S.A. §11002(6) and 11003(7)(C).

24.     At all times relevant to this action, Defendant RCS was a furnisher of consumer information to credit reporting agencies and furnished information relating to Plaintiffs and the mortgage loan serviced by RCS.

### IV.     FACTS

25.     In 1971, Mrs. Bean purchased her home at 23 Ansel Drive, Waterboro, ME.

26.     On or about May 22, 2006, the Beans refinanced their loan and executed and delivered to Decision One Mortgage Co. LLC a certain promissory note (the "Note") in the original principal amount of $165,600.

27.     To secure the Note, on May 22, 2006, the Beans executed and delivered to Decision One Mortgage Co. LLC a mortgage (the "Mortgage") of certain real property located in Waterboro,

4

York County, Maine, which Mortgage was recorded in the York County Registry of Deeds in Book 14862 at Page 666 and is a first lien on the property.

28. The Note and Mortgage are hereinafter collectively referred to as the "loan" or "mortgage loan."

29. Upon information and belief, the mortgage loan became part of the Trust after origination.

30. The Beans fell behind on their mortgage after health issues, a decrease in income, and an increase in living expenses left them unable to pay the monthly mortgage payment.

31. The Beans attempted to get a loan modification but their decreased income made it impossible to afford a monthly payment.

32. The Bank of New York filed a foreclosure action against the Beans on March 6, 2013, docket number RE-13-43 in the Springvale District Court that was subsequently dismissed.

33. The Bank of New York filed a second foreclosure action against the Beans on March 3, 2014 docket number RE-14-54 in the Springvale District Court.

34. Upon information and belief, RCS managed and directed the foreclosure on behalf of and for Bank of New York after taking over the servicing of the loan.

35. In July 2014, the Beans attempted to do a short sale of the property but the Bank of New York, through the loan servicer, would not accept an offer they received.

36. In October 2014, the Beans went to Court on the foreclosure action unrepresented by counsel and agreed to consent to a foreclosure judgment and waive their right to redeem the property in exchange for satisfaction of the outstanding loan amount through the sale of the property, waiver of any deficiency, and a $1,500 cash payment.

37.    The Court entered the Consented Judgment of Foreclosure and Order of Sale ("consent judgment") on October 17, 2014. A copy of the consent judgment is attached hereto as Exhibit 2.

38.    The consent judgment ordered the sale of the real estate and the distribution of proceeds to the amounts found owed on the loan. The consent judgment also stated that the Bank of New York shall not be entitled to a deficiency against the Beans. See Exhibit 2, p. 3.

39.    The Beans also agreed to vacate the property within 45 days of the Order.

40.    The Beans left their home before the end of November 2014 and moved into a rental property.

41.    Realizing that they could no longer remain in a home where they had lived for 40 years was excruciatingly difficult for the Beans. They believed, however, they could no longer afford the home and did what they thought was the "right thing" by consenting to the judgment so that everyone's losses would be minimized.

42.    The Beans consented to the judgment with the waiver of deficiency because they believed they could move forward with a fresh start and not worry about the money owed on the mortgage loan. It provided the Beans with some peace of mind.

43.    In an effort to obtain the $1,500 agreed-upon payment, the Beans, through a HUD-certified housing counselor at York County Community Action, Michael Alexandre, faxed the consent judgment to RCS on December 4, 2014 and December 11, 2014.

44.    In addition, Mr. Alexandre communicated with counsel for Bank of New York regarding the consent judgment via emails on December 4, 5, 8, 10, 11, and 22, 2014.

45.    RCS was well aware of the consent judgment, possessed a copy of the judgment, and was on notice of the terms of the judgment.

46.     Further, the consent judgment was recorded in the York County Registry of deeds, book 16951, page 425 on January 7, 2015.

47.     Yet, despite having actual knowledge of the consent judgment including the running of the redemption period, vacating of the property, and the satisfaction of the judgment including a waiver of any deficiency, RCS delivered, and continues to deliver, debt collection notices to the Beans in an attempt to collect on the mortgage loan, primarily for past due payments and late charges.

48.     On or around January 17, 2015, RCS delivered to the Beans a "mortgage statement" demanding a total "amount due" of $50,758.08 by February 1, 2015. A copy of the January 17, 2015 statement is attached hereto as Exhibit 3.  The majority of the amounts due were allegedly for past due payments and late charges.

49.     On or around February 17, 2015, RCS delivered to the Beans a "mortgage statement" demanding a total "amount due" of $52,137.34 by March 1, 2015 primarily for past due payments and late charges. A copy of the February 17, 2015 statement is attached hereto as Exhibit 4.

50.     RCS delivered to the Beans a notice dated March 2, 2015 regarding the alleged delinquency of the Bean's loan and soliciting the Beans to enter into an option to repay the loan. A copy of the March 3, 2014 notice is attached hereto as Exhibit 5.

51.     On or around March 17, 2015, RCS delivered to the Beans a "mortgage statement" demanding a total "amount due" of $54,782.57 by April 1, 2015 primarily for past due payments and late charges. A copy of the March 17, 2015 statement is attached hereto as Exhibit 6.

7

52.    Upon receipt of each notice, the Beans became more and more distraught. At first they believed perhaps RCS had not yet put the consent judgment on their books. But, as the notices continued to come, the Beans began to wonder what was wrong.

53.    Mrs. Beans became emotionally distressed, breaking into tears when she received each subsequent notice from RCS. She became upset and anxious so that she could not eat or sleep properly. She worried continually about the demand from RCS and the amounts they said she owed.

54.    Mr. Bean wondered if the court judgment meant anything. He could not understand how RCS could try and collect money that the Judge said they did not owe.

55.    They began to believe they might actually owe the money and became increasingly distraught as they knew there was no way they could pay over $50,000 on their limited income, mostly comprise of retirement funds.

## FIRST CLAIM FOR RELIEF
### Violation 15 USC §1692 et seq.: Fair Debt Collection Practices Act
### (As against RCS and BANA)

56.    Plaintiffs repeat and reallege and incorporate by reference all paragraphs above.

57.    Defendant RCS violated the FDCPA. Defendant's violations include, but are not limited to, the following:

a)    The Defendant violated 15 USC §1692d by engaging in conduct, the natural consequence of which was to harass, oppress or abuse the Beans in connection with the collection of the mortgage debt by delivering notices seeking payment of monies now owed by them due to the consent judgment and waiver of deficiency;

b)    The Defendant violated 15 USC §1692e using false, deceptive or misleading representation or means in connection with the collection of the Beans' mortgage debt by

8

delivering notices seeking payment of monies not owed by them due to the consent judgment
containing a full waiver of deficiency, the redemption period running whereby extinguishing all
their rights  in the property, and later, the discharge of the mortgage;

c)      The Defendant violated 15 USC §1692e(2)(A) by falsely representing the character,
amount or legal status of the mortgage debt;

d)      The Defendant violated 15 USC §1692f by using unfair or unconscionable means to
collect or attempt to collect on the mortgage debt;

58.     BANA is jointly and severally liable for the conduct of RCS as its agent.

59.     Defendant's acts as described above were done intentionally with the purpose of coercing
Plaintiffs to pay the alleged debt.

60.     Defendant's conduct constitutes a pattern and practice of violation of the FDCPA.

61.     As a result of the above violations of the FDCPA, the Defendants are jointly and
severally liable to the Plaintiffs for declaratory judgment that defendant's conduct violated the
FDCPA, and Plaintiffs' actual damages, which include damages for emotional distress, statutory
damages, costs and attorney's fees and for such other and further relief as may be just and
proper.

### SECOND CLAIM FOR RELIEF
### Violation 32 M.R.S.A. §11001 et seq.: Maine Fair Debt Collection Practices Act
### (As against RCS and BANA)

62.     Plaintiffs repeat and reallege and incorporate by reference all paragraphs above.

63.     Defendant RCS violated the Maine FDCPA.  Defendant's violations of the Maine
FDCPA but are not limited to, the following:

a)      The Defendant violated 32 M.R.S.A. §11013(1) by engaging in conduct, the natural
consequence of which was to harass, oppress or abuse the Beans in connection with the

9

collection of the mortgage debt by delivering notices seeking payment of monies now owed due

to the consent judgment containing a full waiver of deficiency, the redemption period running

whereby extinguishing all their rights in the property and later, the discharge of the mortgage;

b)    The Defendant violated 32 M.R.S.A. §11013(2) using false, deceptive or misleading

representation or means in connection with the collection of the Bean's mortgage debt by

delivering notices seeking payment of monies not owed;

c)    The Defendant violated 32 M.R.S.A. §11013(2)(B) by falsely representing the character,

amount or legal status of the mortgage debt;

d)    The Defendant violated 32 M.R.S.A. §11013(3) by using unfair or unconscionable means

to collect or attempt to collect on the mortgage debt.

64.    BANA is jointly and severally liable for the conduct of RCS as its agent.

65.    Defendant's acts as described above were done intentionally with the purpose of coercing

Plaintiffs to pay the alleged debt.

66.    As a result of the above violations of the Maine FDCPA, the Defendants are jointly and

severally liable to the Plaintiffs for injunctive and declaratory relief and for actual damages,

which includes damages for emotional distress, statutory damages, attorney's fees and costs and

for such other and further relief as may be just and proper.

### THIRD CLAIM FOR RELIEF
**Illegal, Fraudulent or Unconscionable Conduct In Attempted Collection Of Debts In
Violation of the Maine Consumer Credit Code 9-A M.R.S. §§9-403(G)
(As against all Defendants)**

67.    Plaintiffs repeat and reallege and incorporate by reference all paragraphs above.

68.    The Bank of New York, through RCS, engaged in efforts to collect a debt arising from

the mortgage loan, the balance of which was satisfied through a Court Judgement on October

17, 2014.

10

69.    The Bank of New York and RCS violated 9-A M.R.S. §§9-403(G) by attempting to

collect past due payments on the loan that had been satisfied by the Consent Judgment in *Bank of*

*New York Mellon v. Leonard and Dawn Bean*,  Docket No. RE-14-54, Springvale District Court.

70.    Such violations constitute a per se violation of the Maine Unfair Trade Practices Act

pursuant to 9-A M.R.S. §9-408.

71.    BANA is jointly and severally liable for the conduct of RCS as its agent.

72.    The Plaintiffs are entitled to actual damages, statutory damages, attorneys' fees and costs,

and such other relief the Court does deem just, equitable and proper.

### DEMAND FOR JURY TRIAL

Please take notice that Plaintiffs demand trial by jury in this action.

Respectfully submitted this 3rd day of April, 2015.

**MOLLEUR LAW OFFICE**

Andrea Bopp Stark, Esq., Bar No. 8764
Chet Randall, Esq. Bar No. 9152
419 Alfred St.
Biddeford, ME 04005
207-283-3777

11